1
2
3
4                          UNITED STATES DISTRICT COURT

5                               DISTRICT OF NEVADA

6                                      * * *

7    THE BANK OF NEW YORK MELLON,            Case No. 2:17-CV-210 JCM (CWH)

8                            Plaintiff(s),                ORDER

9             v.

10   SFR INVESTMENTS POOL 1, LLC., et al.,

11                           Defendant(s).

12

13          Presently before the court is cross defendant Countrywide Home Loans, Inc.'s

14   ("Countrywide") motion to dismiss defendant/cross claimant SFR Investments Pool 1, LLC's

15   ("SFR") counterclaims.  (ECF No. 74).  SFR has not filed a response and the time to do so has

16   passed.

17          Also before the court is defendant Aliante Master Association's ("Aliante") motion for

18   summary judgment.  (ECF No. 52).  Plaintiff Bank of New York Mellon ("BNYM") filed a

19   response (ECF No 57), to which Aliante replied (ECF No. 60).

20          Also before the court is BNYM's motion for summary judgment.  (ECF No. 53).  Aliante

21   filed a response (ECF No. 55), to which BNYM replied (ECF No. 59).  SFR also filed a response

22   to BNYM's motion for summary judgment (ECF No. 58), to which BNYM replied (ECF No. 61).

23   **I.      Facts**

24          This action arises from a dispute over real property located at 4108 Erinbird Avenue, North

25   Las Vegas, Nevada.  (ECF No. 1).

26          Roderick Smith and Melinda Smith purchased the property in 2005.  (ECF No. 53-1).

27   The Smiths financed their purchase with a loan in the amount of $263,520.00 from Countrywide.

28   (*Id*.).  Countrywide secured the loan with a deed of trust, which names Countrywide as the lender,

James C. Mahan
U.S. District Judge

1    Recontrust Company as the trustee, and Mortgage Electronic Registration Systems, Inc. as the

2    beneficiary as nominee for the lender and lender's successors and assigns. (*Id*.). On November

3    30, 2005, Countrywide recorded the deed of trust. (*Id*.). On October 3, 2011, Countrywide

4    assigned the deed of trust to BNYM. (ECF No. 53-2).[1]

5        While in possession of the property, the Smiths were liable for a $39.00 monthly

6    homeowners' association fee to Aliante. (ECF Nos. 1, 39). In July 2010, the Smiths stopped

7    paying their homeowners' association fees. (ECF No. 53-4). On July 21, 2011, Nevada

8    Association Services, on behalf of Aliante, recorded a notice of default and election to sell. (ECF

9    No. 1). Nevada Association Services also mailed the notice of default and election to sell to

10   BNYM, Countrywide, and all other relevant parties named in the deed of trust. (ECF Nos. 1, 52).

11   Because Aliante had a superpriority lien on the property, a foreclosure sale would extinguish

12   BNYM's deed of trust. To avoid losing its interest in the property, BNYM, through its sub-

13   servicer, Bank of America, N.A., forwarded Nevada Association Services a request to pay off the

14   superpriority lien. (ECF No. 53-4).

15       On September 15, 2011, Nevada Association Services provided BNYM with a statement

16   of the Smiths' payment history from July 1, 2010 through October 31, 2011. (*Id*.). The statement

17   shows an outstanding balance of $2582.26, but does not identify what portion of the balance

18   constitutes the superprioirty lien. (*Id*.). On October 20, 2011, Bank of America, N.A. sent a check

19   to Nevada Association Services in the amount of $351.00—the amount Bank of America, N.A.

20   presumed to be the superpriority portion of the lien. (*Id*.). Nevada Association Services did not

21   accept the check. (*Id*.). On January 23, 2014, Nevada Association Services, on behalf of Aliante,

22   sold the property to SFR for $27,000. (ECF No. 53-3). On February 3, 2014, Nevada Association

23   Services recorded the deed of foreclosure. (ECF No. 53-3).

24       On January 25, 2017, BNYM initiated this action against Aliante and SFR. (ECF No. 1).

25   In its complaint, BNYM raises three causes of action: (1) quiet title against SFR; (2) violation of

26   due process against all defendants; (3) wrongful foreclosure against Aliante. (*Id*.). On March 6,

27

28       [1] On August 9, 2017, Countrywide assigning "all beneficial interest" to United Mortgage & Loan, Investment Corp. (ECF No. 72-2). To date, Countrywide does not hold nor does it claim to hold any interest in the property.

1   2017, SFR filed an answer, in which it raises various counterclaims and cross-claims against

2   plaintiffs and new parties, including cross defendant Countrywide. (ECF No. 18).

3       On September 6, 2018, the parties filed stipulation requesting the court to dismiss with

4   prejudice Aliante. (ECF No. 77). On September 7, 2018, the court dismissed Aliante. (ECF No.

5   78).

6   **II.      Legal Standard**

7       *a. Motion to dismiss*

8       A court may dismiss a complaint for "failure to state a claim upon which relief can be

9   granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "[a] short and plain

10  statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell*

11  *Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed

12  factual allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the

13  elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

14      "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550

15  U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual

16  matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citation

17  omitted).

18      In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply

19  when considering motions to dismiss. First, the court must accept as true all well-pled factual

20  allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth.

21  *Id.* at 678–79. Mere recitals of the elements of a cause of action, supported only by conclusory

22  statements, do not suffice. *Id.* at 678.

23      Second, the court must consider whether the factual allegations in the complaint allege a

24  plausible claim for relief. *Id.* at 679. A claim is facially plausible when the plaintiff's complaint

25  alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the

26  alleged misconduct. *Id.* at 678.

27      Where the complaint does not permit the court to infer more than the mere possibility of

28  misconduct, the complaint has "alleged—but not shown—that the pleader is entitled to relief." *Id.*

**James C. Mahan**
**U.S. District Judge**

1  (internal quotation marks omitted).  When the allegations in a complaint have not crossed the line

2  from conceivable to plausible, plaintiff's claim must be dismissed.  *Twombly*, 550 U.S. at 570.

3        The Ninth Circuit addressed post-*Iqbal* pleading standards in *Starr v. Baca*, 652 F.3d 1202,

4  1216 (9th Cir. 2011).  The *Starr* court stated, in relevant part:

5        First, to be entitled to the presumption of truth, allegations in a complaint or
       counterclaim may not simply recite the elements of a cause of action, but must
6        contain sufficient allegations of underlying facts to give fair notice and to enable
       the opposing party to defend itself effectively.  Second, the factual allegations that
7        are taken as true must plausibly suggest an entitlement to relief, such that it is not
       unfair to require the opposing party to be subjected to the expense of discovery and
8        continued litigation.

9  *Id.*

10       b.  *Summary Judgment*

11       The Federal Rules of Civil Procedure allow summary judgment when the pleadings,

12  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

13  show that "there is no genuine dispute as to any material fact and the movant is entitled to a

14  judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A principal purpose of summary judgment is

15  "to isolate and dispose of factually unsupported claims."  *Celotex Corp. v. Catrett*, 477 U.S. 317,

16  323–24 (1986).

17       For purposes of summary judgment, disputed factual issues should be construed in favor

18  of the non-moving party.  *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990).  However, to be

19  entitled to a denial of summary judgment, the nonmoving party must "set forth specific facts

20  showing that there is a genuine issue for trial."  *Id.*

21       In determining summary judgment, a court applies a burden-shifting analysis.  The moving

22  party must first satisfy its initial burden.  "When the party moving for summary judgment would

23  bear the burden of proof at trial, it must come forward with evidence which would entitle it to a

24  directed verdict if the evidence went uncontroverted at trial.  In such a case, the moving party has

25  the initial burden of establishing the absence of a genuine issue of fact on each issue material to

26  its case."  *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000)

27  (citations omitted).

28

**James C. Mahan**
**U.S. District Judge**

By contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

. . .

. . .

James C. Mahan
U.S. District Judge

- 5 -

**III.    Discussion**

Presently before the court is a motion to dismiss and two motions for summary judgment. The court will first address Countrywide's motion to dismiss, then Aliante's motion for summary judgment, and lastly BNYM's motion for summary judgment.

*a.    Motion to dismiss*

Countrywide moves to dismiss with prejudice SFR's counterclaims, which are premised on the false assumption that Countrywide has an interest in the property. (ECF No. 74). SFR did not file a response to Countrywide's motion.

Pursuant to Local Rule 7-2(d), "the failure of an opposing party to file points and authorities in response to any motion . . . constitutes a consent to the granting of the motion." LR 7-2(d). Accordingly, the court will grant with prejudice Countrywide's motion to dismiss. *See United States v. Hvass*, 355 U.S. 570, 574–75 (1958) (holding that local rules have the force of law).

*b.    Aliante's motion for summary judgment*

Aliante moves for summary judgment on BNYM's claim for violation of due process. (ECF No. 52). However, BNYM no longer has a due process claim against Aliante because the court dismissed Aliante from this action. *See* (ECF No. 78). Accordingly, the court will deny as moot Aliante's motion for summary judgment.

*c.    BNYM's motion for summary judgment*

BNYM moves for summary judgment, requesting the court to declare that the deed of trust still encumbers the property. (ECF No. 53). BNYM contends that the foreclosure sale did not extinguish BNYM's deed of trust because BNYM attempted to tender the superpriority portion of the lien and Aliante foreclosed on the property pursuant to an unconstitutional statute. (*Id.*).

Under Nevada law, "[a]n action may be brought by any person against another who claims an estate or interest in real property, adverse to the person bringing the action for the purpose of determining such adverse claim." Nev. Rev. Stat. § 40.010. "A plea to quiet title does not require any particular elements, but each party must plead and prove his or her own claim to the property in question and a plaintiff's right to relief therefore depends on superiority of title." *Chapman v. Deutsche Bank Nat'l Trust Co.*, 302 P.3d 1103, 1106 (Nev. 2013) (citations and internal quotation

marks omitted). Therefore, a party must show that its claim to the property is superior to all others in order to succeed on a quiet title action. *See also Breliant v. Preferred Equities Corp.*, 918 P.2d 314, 318 (Nev. 1996) ("In a quiet title action, the burden of proof rests with the plaintiff to prove good title in himself.").

NRS 116.3116 *et seq.*[2] ("Chapter 116") allows an HOA to place a lien on its homeowners' residences for unpaid assessments and fines. Nev. Rev. Stat. § 116.3116(1). Under NRS 116.3116(2), HOA liens have priority over other encumbrances. Nev. Rev. Stat. § 116.3116(2). However, some encumbrances are not subject to an HOA lien's priority, including "[a] first security interest on the unit recorded before the date on which the assessment sought to be enforced became delinquent." Nev. Rev. Stat. § 116.3116(2)(b).

Chapter 116 then provides an exception to the subparagraph (2)(b) exception for first security interests. *See* Nev. Rev. Stat. § 116.3116(2). In *SFR Investments Pool 1 v. U.S. Bank*, the Nevada Supreme Court provided the following explanation:

> As to first deeds of trust, NRS 116.3116(2) thus splits an HOA lien into two pieces, a superpriority piece and a subpriority piece. The superpriority piece, consisting of the last nine months of unpaid HOA dues and maintenance and nuisance-abatement charges, is "prior to" a first deed of trust. The subpriority piece, consisting of all other HOA fees or assessments, is subordinate to a first deed of trust.

334 P.3d 408, 411 (Nev. 2014) ("*SFR Investments*").

Under Chapter 116, an HOA can enforce its superpriority lien with a nonjudicial foreclosure sale. *Id*. at 415. Thus, "NRS 116.3116(2) provides an HOA a true superpriority lien, proper foreclosure of which will extinguish a first deed of trust." *Id.* at 419; *see also* Nev. Rev. Stat. § 116.31162(1) (providing that "the association may foreclose its lien by sale" upon compliance with the statutory notice and timing rules).

NRS 116.31166(1) provides that when an HOA forecloses on a property pursuant to NRS 116.31164, the following recitals in the deed are conclusive proof of the matters recited:

---

[2] The 2015 Legislature revised Chapter 116 substantially. 2015 Nev. Stat., ch. 266. Except where otherwise indicated, the references in this order to statutes codified in NRS Chapter 116 are to the version of the statutes in effect in 2011–13, when the events giving rise to this litigation occurred.

(a) Default, the mailing of the notice of delinquent assessment, and the recording of the notice of default and election to sell;
(b) The elapsing of the 90 days; and
(c) The giving of notice of sale[.]

Nev. Rev. Stat. § 116.31166(1)(a)–(c).[3] "The 'conclusive' recitals concern . . . all statutory prerequisites to a valid HOA lien foreclosure sale." *See Shadow Wood Homeowners Assoc. v. N.Y. Cmty. Bancorp., Inc.*, 366 P.3d 1105 (Nev. 2016). Nevertheless, courts retain the equitable authority to consider quiet title actions even when an HOA's foreclosure deed contains statutorily conclusive recitals. *See id.* at 1112.

Here, the parties have provided the recorded notice of delinquent assessment, the recorded notice of default and election to sell, the recorded notice of foreclosure sale, and the recorded trustee's deed upon sale. *See* (ECF Nos. 1, 52, 57). Further, the recorded foreclosure deed contains the necessary recitals to establish compliance with NRS 116.31162 through NRS 116.31164. (ECF No. 53-3); *See id*. at 1112. Therefore, pursuant to NRS 116.31166 and the recorded foreclosure deed, the foreclosure sale was valid to the extent that it complied with NRS 116.31162 through NRS 116.31164.

While NRS 116.3116 accords certain deed recitals conclusive effect, it does not conclusively entitle the buyer at the HOA foreclosure sale to success on a quiet title claim. *See Shadow Wood*, 366 P.3d at 1112 (rejecting that NRS 116.31166 defeats, as a matter of law, actions to quiet title). Thus, the question remains whether plaintiff has demonstrated sufficient grounds to justify setting aside the foreclosure sale. *See id.*

---

[3] The statute further provides as follows:

2. Such a deed containing those recitals is conclusive against the unit's former owner, his or her heirs and assigns, and all other persons. The receipt for the purchase money contained in such a deed is sufficient to discharge the purchaser from obligation to see to the proper application of the purchase money.

3. The sale of a unit pursuant to NRS 116.31162, 116.31163 and 116.31164 vests in the purchaser the title of the unit's owner without equity or right of redemption.

Nev. Rev. Stat. § 116.31166(2)–(3).

"When sitting in equity . . . courts must consider the entirety of the circumstances that bear upon the equities. This includes considering the status and actions of all parties involved, including whether an innocent party may be harmed by granting the desired relief." *Id.*

BNYM raises the following grounds in support of its motion for summary judgment: (1) BNYM tendered the superprioirty portion of the lien, rendering the homeowners' association's assessements as a sub-prioirty lien; and (2) Aliante foreclosed on the property pursuant to a facially unconstitutional statute under the Due Process Clause of the Fourteenth Amendment. (ECF No. 53).

### i. Tender

BNYM argues that the deed of trust still encumbers the property because Aliante wrongfully rejected BNYM's tender of the superpriority portion of the lien. (*Id.*). The court disagrees because BNYM did not tender an amount sufficient to extinguish Aliante's superpriority lien.

Under NRS 116.31166(1), the holder of a first deed of trust may pay off the superpriority portion of an HOA lien to prevent the foreclosure sale from extinguishing the deed of trust. *See* Nev. Rev. Stat. § 116.31166(1); *see also SFR Investments*, 334 P.3d at 414 ("But as a junior lienholder, BOA could have paid off the SHHOA lien to avert loss of its security . . ."). The superpriority portion of the lien consists of "the last nine months of unpaid HOA dues and maintenance and nuisance-abatement charges," while the subpriority piece consists of "all other HOA fees or assessments." *SFR Investments*, 334 P.3d at 411; *Horizons at Seven Hills Homeowners Association v. Ikon Holdings, LLC*, 373 P.3d 66 (Nev. 2016).

Here, BNYM presumed that the amount set forth in the response from Aliante included more than the superpriority portion of the lien and that a lesser amount would be sufficient to preserve its interest in the property. *See generally, e.g.*, Nev. Rev. Stat. § 107.080; *see also* Nev. Rev. Stat. § 40.430. Instead, BNYM should have prevented the foreclosure sale by using available legal remedies—for example, paying the claimed amount and then filing suit for a refund of the subpriority portion or seeking a temporary restraining order and a preliminary injunction. *See* Nev. Rev. Stat. §§ 14.010, 40.060.

1    After neglecting to use these remedies, BNYM now seeks restore the deed of trust despite

2    its failure to follow the rules set forth in the statutes.  *See Shadow Wood Homeowners Assoc. v.*

3    *N.Y. Cmty. Bancorp., Inc*., 366 P.3d 1105, 1114 n.7 (Nev. 2016) (citing *Barkley's Appeal.*

4    *Bentley's Estate*, 2 Monag. 274, 277 (Pa. 1888)) ("[W]e can see no way of giving the petitioner

5    the equitable relief she asks without doing great injustice to other innocent parties who would not

6    have been in a position to be injured by such a decree as she asks if she had applied for relief at an

7    earlier day.").

8    Accordingly, BNYM's argument regarding tender does not entitle it to judgment as a

9    matter of law.

10   ### ii.  Due process

11   BNYM argues that the court should grant summary judgment because, under *Bourne*

12   *Valley*, Aliante foreclosed pursuant to a facially unconstitutional state statute.  (ECF No. 53); *see*

13   *Bourne Valley Court Tr. v. Wells Fargo Bank, NA*, 832 F.3d 1154 (9th Cir. 2016).  However,

14   BNYM's reliance on *Bourne Valley* is misguided.

15   In *Bourne Valley*, the Ninth Circuit held that Chapter 116 violated the Due Process Clause

16   of the Fourteenth Amendment because it did not require a party foreclosing on a property to

17   provide notice to a holder of any subordinate security interest.  *Bourne Valley*, 832 F.3d at 1159.

18   This conclusion was based on the interpretation that NRS 116.31168(1) did not incorporate NRS

19   107.090, which requires notice of default to any person with a subordinate security interest.  *Id*.

20   When the Ninth Circuit ruled in *Bourne Valley*, there was no authority on the interpretation

21   of NRS 116.31168(1).  Left with the general doctrines of statute interpretation, the court declined

22   to incorporate NRS 107.090 on the grounds that it would render NRS 116.31168(1) superfluous.

23   *Id*. (citing *S. Nev. Homebuilders Ass'n v. Clark Cnty.*, 117 P.3d 171, 173 (2005)).

24   Since the Ninth Circuit's decision in *Bourne Valley*, the Nevada Supreme Court has

25   provided its interpretation of Chapter 116, holding that NRS 116.31168(1) does incorporate NRS

26   107.090.  *SFR Invs. Pool 1, LLC. v. The Bank of N.Y. Mellon*, 422 P.3d 1248, 1252 (Nev. 2018)

27   (expressly refuting *Bourne Valley*).  Under this ruling, NRS § 116.31168(1) requires notice to

28   subordinate interest holders and, thus, does not violate the Fourteenth Amendment.  *Id*.

Both the Ninth Circuit and the Supreme Court have recognized, "a [s]tate's highest court is the final judicial arbiter of the meaning of state statutes." *Sass v. California Bd. of Prison Terms*, 461 F.3d 1123, 1129 (9th Cir. 2006) (citing *Gurley v. Rhoden*, 421 U.S. 200, 208 (1975)); *see also Knapp v. Cardwell*, 667 F.2d, 1253, 1260 (9th Cir. 1982) ("State courts have the final authority to interpret, and, where they see fit, to reinterpret the states' legislation."). Accordingly, this court will follow the Nevada Supreme Court's decision and hold that Aliante foreclosed on the property pursuant to a constitutional statute.

**IV.    Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that Countrywide's motion to dismiss (ECF No. 74) be, and the same hereby is, GRANTED with prejudice.

IT IS FURTHER ORDERED that Aliante's motion for summary judgment (ECF No. 52) be, and the same hereby is, DENIED as moot.

IT IS FURTHER ORDERED that BNYM's motion for summary judgment (ECF No. 53) be, and the same hereby is, DENIED.

DATED September 21, 2018.

_____
UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**